Case 14-1178 Mary Jane Gross et al. v. City of Dearborn Heights et al. Oral Argument 15 minutes per side. Mr. Williams for the appellants. Good morning. Amos Williams representing the appellants in this case Terry and Mary on Errors by the Trial Court, an error that we see as absolutely egregious and it tainted the analysis of every one of the plaintiff's claims. This is a case that arose out of the officer's service of a warrant from Kentucky in Michigan. As it turns out, the warrant was an error, but that's not attributable to the officers. We're not making any issue about that. They got the warrant. They're required to go out and service it. But it's important to notice that when this department got the warrant, they issued it to an officer who went out in March, knocked on the door, said, we have a warrant for your arrest. That wasn't a fight. You're dealing with two 60-year-old people. They invited them in, sat them down at the kitchen table, talked to them about it, and ultimately the officers left when Kentucky couldn't provide a photo and fingerprint so that they're not having a false arrest. The second packet, asking for extradition, they go out at night and they knock on the door and they ultimately wind up going in by force. Two officers, one of them 6'3 and 240 pounds, the other one 6'0, over 200 pounds. And they were not the officers that had made the first... No, Judge, they were not, but they did know about that first... They did know about that first. That's according to the defendant officer's op code. They knew about what had happened. So now they're going out and saying, we know that somebody else came the first time, and now we have proof it's you. We have this picture. Essentially, even though they were in error, yeah, they had her picture. The problem is that in this particular case, the officers don't announce their purpose. They go in and start telling them some lie about some neighbor called on a disturbance and we gotta come in to check you. And I know the courts give officers a lot of leeway. Clever ploys are necessary on occasion, but this is not one of those occasions. They knock on the door and they say a neighbor called on you. Mr. Gross is standing there as one officer testifies that he's got a hand on either door jamb there, and he's essentially barring their way. And he's saying, what neighbor called? Who? What? He's clearly asking these questions. Now, the evidence we have here is that one of the officers has his mic on. We've got a transcript that no one is disputing is not accurate. The officers claim, for instance, that when they knocked on the door, Mr. Gross came to the door and they announced their presence and purpose. No, they didn't. They lied about why they were there. The officers claimed that they told them they had a warrant, which would have obviated this whole issue. Had they said, we've got a warrant for your arrest, even if he barred the door, even if she backed up or anything else, they've got the right to go in at that point. On the wrongful entry, we're saying, do they have the right to go in based on what they did? I don't think they do. Assuming you're right, what are the damages we're talking about here? I mean, the damages are ended once they tell them what the reason is, and they told them, even if it was after they went in and there was a violation, they told them pretty soon, at the latest, after they went in, what they were doing it for, and then the damages. I realize that's not the issue before us, but it just does seem like this is a simple matter, I guess. Well, you get into the butt-four chain of events, Judge, is what happens. Well, but the butt-four chain isn't, you can say maybe there was a harm when they arrested her, but if that, it's a different issue whether that was excessive force or not. If you assume for the moment that was an excessive force, that's a different issue, we'll decide separately. The damages for going in, we're just talking about something pretty momentary, right? I mean, they were in the house a few moments before they should have been. Is that right? Yeah. Would we say that the damages are nominal? No, I'm not saying they're nominal, I'm just asking as we've got a warrant for your arrest. They had the warrant. I mean, the warrant was issued in error. We can't deny that. Go in without permission. They brushed by this homeowner and all they had to do was say, we've got a warrant, and it would have obviated the whole thing. On the entry issue, there were a few moments of unconstitutional intrusion. Yes, Your Honor, that's true, but what we're really talking about. I don't mean to minimize it, I just want to characterize it. Right, but what we're talking about. What about the court? What we're talking about, we're looking for the courts to sort of guide the police in. It doesn't matter if the damage is going to be minimal. If you've got a proper way to do it, then do it properly. If we have a knock and announce rule, and we can't enforce it because the damages are minimal, then the rule doesn't exist. Our biggest claim of error, however, in this case, is that the trial judge disallowed the only cogent body of evidence in support of the plaintiff's claim. She disallowed the testimony of Mr. Gross and his deposition, and she says explicitly she's not even considering it because she said that testimony, that and his affidavit contradict all the other testimony that's not worthy of credence. You said that's error because that should have gone to the fact finder to assess the but the reason she disallowed it was in error. The court, let me get my glasses so I can see this, but the court relied on a case called, the court relied on a case called Scott v. Harris, which was the auto chase case where there is a video, visual, video that flatly contradicted his testimony. And the court said where no reasonable juror could do that, you can exclude his testimony. We're not talking about a video here, we're talking about an audio tape. And so the discrepancies about what happened on that audio tape when is absolutely important. She also relied, or the court also relied on a case called Cleveland v. Policy Management, where the court held a party can't come in, and we all know this, a party can't come in and by a presentation of an affidavit contradict earlier sworn testimony. That's not what happened here. Mrs. Gross never submitted an affidavit of any sort. She was confused at her deposition and defense counsel does what defense counsel is supposed to do. But the body of evidence that was excluded here is that of Mr. Gross, who was sitting there and his testimony obviously is contrary to the officers. Well even if we find that the court was in error on that, why is that not harmless error? It's not harmless error because you have violated what it is that's required when a court does a summary judgment. I don't think it's harmless when you eliminate the only cogent body of evidence in support of a very confused plaintiff for reasons that are in error. There is no basis to eliminate this testimony. If that testimony had been included and your client has put forth a number of claims, which one of these claims does that testimony make the difference for? Excessive force, primarily. If you've gotten, and do understand that Mr. Gross' affidavit, it's nothing but the audio tape transcript and he's saying at this point, this is what happened. And at this point, this is what happened. And it contradicts the officers on every important claim with respect to excessive force. Every one. And so talk to us now about the excessive force claim because I understand that Mrs. Gross was in the kitchen. Yes. She was possibly handcuffed. Is that right? Oh, she was handcuffed in the kitchen. The issue is when. And she was in the kitchen. She was handcuffed. But wasn't she in the area of weapons or implements that could have potentially caused harm to the officers? Yes, Judge. She was in the area. But she was handcuffed when she was in the area. That's why the handcuffing is such a concern. When Mrs. Gross asked to put her clothes on, she actually asked for her panties, but at the time she asked for that, she was already handcuffed and the defendant officer admits that. The commotion on the audio tape where she screams, you broke my knee, which is when they push her into the cabinet, happens after that. That means that she was already handcuffed when that happened. That's why that's significant. And that's why when you when she was handcuffed, what they did, the only evidence that's left is Mrs. Gross' testimony and she is absolutely confused and that's very clear in her deposition. So we think it was not harmless error to exclude that testimony and that evidence because that is precisely what creates the genuine issue of material fact that needs to go to a jury for further evidence. Further, by eliminating that body of evidence, the court allows the officers to assert claims that are absolutely, because she not only did away with his affidavit, she did away with the transcript of the tape. That's what his affidavit was. And it allows the officers to make claims that just are not true. They make claims, for instance, that this woman after being handcuffed and taken out of the house walked to the car without a problem. Mr. Gross is saying that's not true, she was dragged. Well, maybe you're dealing with different semantics, but it's clear from that tape, they're telling this 66-year-old woman, well don't put weight on it. Hop. They're telling her to hop to the car. She's telling them, my leg is broken, you broke my knee. They're saying, well put your butt in first and slide. It's clear that she didn't walk to the car. She was injured. This really has to do more with them knowing about the injury and the deliberate indifference issue. They knew that she was injured there. She gets to the station. The video evidence in the station has her telling them, you broke my knee. She's sitting there rubbing her knee and she asks for medical attention. One, she's got an injury that's obvious. And two, you've got a deliberate refusal to do what she asks. Specifically, she says, please send me to a doctor to fix this before you send me anywhere else. Thank you, Counsel. Thank you. Good morning, Your Honors. May it please the Court, Lindsay Kutchmark on behalf of the appellees, City of Dearborn Heights, and the individual officers. I think I'll start with the unlawful seizure kind of go in the order that he did. He admits that the officer knocked on the door. You can hear that in the audio recording. And then you can hear Terry come to the door and the officer says, can I come in? And he says, hold on. And you can tell the officer is still waiting outside. There's no forcible entry whatsoever. How can you tell? How can I tell what? No video. How can you tell? You don't hear any door being broken down. You don't hear, I mean. You hear that later? Pardon me? You hear the door being broken down later? No, you never hear the door being broken down at any point during the audio. Well, the door was open at that point, wasn't it? Correct. So how do you, again, how do you know when he went in? I'm just asking what the basis is for your statement. You can hear Mr. Gross say, hold on a minute. And the officer says, okay. And then he comes back. And they're still at the door. I mean, everybody's testimony is kind of consistent that they're at the door for a little bit. And so the officers don't immediately barge in. I mean, when he says, when Mr. Gross says, hold on, the officer says, okay. And then there's a pause and then he comes back. Okay, so when we listen, we're sure. No, I mean, obviously there's no video. You can't tell exactly where they were. But, you know, with the testimonies. If you can't tell, then he's saying they were inside before he said we have a warrant. But you're saying we'll be able to listen and know that they weren't inside before he said we have a warrant. Well, the point at which he said that they have a warrant, yeah, that is you cannot tell where they are, whether they are still outside or whether they're in the house. I'm talking about. So maybe they didn't say they had a warrant inside. That much may be true. Is that a violation then, to go inside before you say I have a warrant? I would argue no, Your Honor. And I think we cited a few cases in our brief about, I believe, U.S. v. Gatewood. If there's no forcible entry, the Fourth Amendment isn't implicated. And here there's no evidence of a forcible entry. And as far as I'm concerned, Mrs. Gross doesn't even argue there was a forcible entry. She basically just says, you know, I thought the argument was, but I could be wrong. I thought the argument was they went in without saying why, without giving the reason. And although, that's what I undertook his argument to be, that although in some circumstances you might not have to give a reason, in this circumstance there was no reason not to give a reason. And therefore it's constitutionally required that you say we have a warrant. You knock and announce. You don't just knock and harumph. You knock and announce. And what you announce is we have a warrant for the arrest of Mrs. Gross. Then you go in. Well, in this case they may have knocked and told a story. They said they were there for a welfare check, which obviously is not the case. But at some point they said we have a warrant. And the argument is, saying we have a welfare check and going in and then saying we have a warrant is unconstitutional. Do you challenge that factually or legally? Well, both actually. I mean factually because we have Mrs. Gross testifying. What's the legal challenge, assuming there's a genuine issue of material fact, as to the factual challenge? The legal challenge is U.S. v. Gatewood says, absent a forcible entry, the Fourth Amendment is not implicated. And I believe it is U.S. v. Williams, which we also, pardon me? You have to knock and announce? Well, U.S. v. Williams, in that case this court said, you know, if the officers enter through an open door, the entry is reasonable even if they enter without invitation or announcement of purpose. So they don't have to announce if the door is open? That is how I interpret those. So your argument then is that the door was open? Yes. So they could just go through without saying anything? You can hear Mr. Gross and the officer going back and forth kind of talking. And that's after you kind of can hear the knock and the opening of the door, Mr. Gross coming and answering the door. Maybe you should go on to the other arguments. In terms of the excessive force, we do have, I'm sure you're familiar with Mrs. Gross' testimony that essentially while the officers were trying to place her in handcuffs, she was holding onto the sink, kind of hovering over. She testified that she did that for several minutes, or she managed to do that for several minutes, during which time the officers hurt her. And then she says, you know, one of the officers pushed her face into the kitchen utensils hanging on the wall. The other officer put his knee into her knee and kind of pushed it into the cabinet door. I think in light of her admission that she was resisting arrest, this... Wait a minute. There's also the argument that she was holding onto the sink because her knee had been broken and she was trying to keep from, in effect, falling on the floor. I don't recall him making that argument. I don't actually recall Mr. Gross testifying to that either. Mrs. Gross is the one who testified that she was holding onto the sink. Terry, Mr. Gross doesn't reference that in his deposition. Does he say she was handcuffed when this is happening? He does, yes. Why is that not something a jury could believe? Well, Your Honor, I believe that in this case the court is obligated to accept Mary's testimony unless it's blatantly contradicted by the record. Why is that? Terry's not a... You have three people who say someone's beat up and the actual person says, my memory is I wasn't beat up. That can't go to the jury. Well, you know, I couldn't find a case from this court on that specific issue about the, you know, a party can't contradict his testimony with a later filed affidavit. But I know in Eighth Circuit has extended that to this situation where the plaintiff, you know, doesn't want the court to accept her testimony, so she offers somebody else's testimony. And I think I also cited an Eleventh Circuit case in our brief about how, you know, the plaintiff, our obligation, or the court's obligation to construe the evidence in her favor doesn't require... She's not the only plaintiff here. Right, but she is on the excessive force claim. So, so the contradictions in this testimony don't create a dispute of fact, of material, a very material fact. No, I believe that Mrs. Gross, her testimony is very clear about she was not handcuffed at this point, that she's doing this while they're trying to handcuff her, or that's when the force was used. And I believe for qualified immunity purposes, we have to accept, the court has to accept that testimony unless it's blatantly contradicted by the record. And the objective evidence, the audio recording, doesn't contradict her testimony. That principle is usually applied in a situation where the claimant is saying I was hurt in a certain way, and then we have arguably a contradiction in the record which shows that you weren't hurt. That's what's going on in Scott v. Harris. Right, I understand that. Now you're using that language to say when the claimant includes something in her testimony that goes against her case, she can't present contrary testimony of some other witness who otherwise is a perfectly acceptable witness. That's sort of using the principle for a different purpose, isn't it? Well, I think the main principle here is that the plaintiff, Mrs. Gross, is bound by her testimony. Not all plaintiffs are bound by their testimony unless it's a judicial admission. Well, in terms of Terry's testimony, that can be ignored if it's blatantly contradicted by the record, and the audio recording does blatantly contradict his testimony. So the audio recording now doesn't show when their handcuffs were put on. It does not. So that's the issue now, right, is when the handcuffs were put on? So if I get it straight, her testimony suggests that she was not handcuffed when she was treated this way, but there's other testimony suggesting that she was handcuffed when she was treated this way, and you're saying we have to disregard that testimony because the other testimony comes from the witness herself. Well, I'm saying that, and the audio recording, which is objective and nobody's disputing the accuracy, also supports Mrs. Gross's testimony that she was not handcuffed at the point force was used. But how does the audio tape support the timing of handcuffed? Was the officer narrating as he was going through? No, Your Honor, but I think the statements in there, Mr. Gross tries to pinpoint the point where she's handcuffed. After that point, you hear Mr. Gross saying, let Mary go in there and another room, and then you hear the female officer saying, where's she going? She doesn't need any clothes. If she's handcuffed at that point, how is she going anywhere? How are the officers letting her go anywhere? I think even more telling is that moments later you hear... But we have to, that's an inference. That's a little piece of speculation, isn't it? She can walk when she's, normally she could. In this case, she's got a broken leg, but let me ask you something else, if I'm not stepping on Judge Donald's... No, but the point that you made about the audio, and I agree with Judge Daugherty, it is an inference because you say, where is she going? I read that as the officer saying, where she's going she doesn't need. So I'm just still not sure how the audio refutes that. Okay, I think the more telling statement is that after the point where he says she's handcuffed, you hear an officer, and even Mr. Gross, I believe from the audio that it is him, telling her to stop resisting multiple times. What is she resisting if she's in handcuffs and secured and under control? Well, you used three different things, but let's go to Judge Daugherty. Okay. I'm having trouble understanding why resisting, I know the officers use the term, but why holding onto the sink constitutes the kind of resistance that would cause you to end up with a broken leg? I mean, she's resisting as they're trying to put handcuffs on her. How she broke her leg, that's not entirely clear. I mean, she says that the officer put his knee into her knee and pushed it into the... You've got two fairly big men and an officer holding onto the sink. Wasn't there some way to effectuate this handcuffing without using the kind of force that would end up breaking somebody's leg? I mean, I'm not arguing that it's res ipsa loquitur, but it's close. Well, Your Honor, she did testify, Mrs. Gross did testify that she managed to hold onto the sink for a few minutes while they're trying to get her arms. You really think it was a few minutes? I mean, this... All right, a few minutes. A few minutes is a quite long time. I just... And you've got these two 200 and something pound men, and what did she weigh? I don't know. I think it's in the record. I may be wrong. Well, Your Honor, I would say I would reference the cases in our brief too, where we have a noncompliant suspect who's not complying with officer's commands or willing to be handcuffed, and the courts have held much more extreme... You know, this is where the whole question of whether that warrant was valid or not comes in, though. The officers opposing counsel conceded that the officers thought their warrant was valid, and they were permitted to assume that, but this woman knows that it's not a valid warrant, and here they are back again when she knows for certain that she is not wanted for trafficking in drugs two states away. Doesn't that add to the totality of the circumstances about, for example, whether there is a situation here that calls for a jury to determine what's she knows that's not a valid warrant. Yes, she's resisting, but maybe she's resisting because not only did they tell a lie to get their way in the house, but here they are back again with a bad warrant, and now they look like they're going to carry her off. Well, Your Honor, I'm not saying she wasn't understandably upset. What I'm saying is that these officers were trying to secure her in handcuffs without using force, but she put up a struggle, and they had to use some degree of force. The struggle was holding onto the sink? There's nothing under the sink. She was swinging at them, elbowing them, lashing at them? Kicking them. Right. No, I believe, and if you do credit Terry's testimony that she was kind of, or I'm sorry, the officer's testimony is that she kind of was moving them around, and they were moving with her so that they could get next to a service, and they somehow ended up in the kitchen. I mean, you can hear her saying let go, get away from me, and you can hear her, you can hear the officers, and even her husband saying do not resist. There's clear that they were not able to secure her in handcuffs with just the typical trying to, you know, grabbing her arm and putting it behind her back. Well, that's pretty interesting when you've got trained officers, and your counsel says one is six-three and one is six-something, and she's only got two arms, and she's holding onto the sink, and they can't manage to handcuff her without breaking her knee. Well, I mean, I'm not sure how just putting her knee, her testimony, and there's no testimony to dispute it, is that he put her knee into, the officer put his knee into her knee and pushed into a cabinet door. And I know on the excessive force standard we are looking at such forces as necessary under the circumstances, and we're also looking at, as counsel said, whether there are genuine issues of fact, and I think sitting here talking about this just raises a lot of questions. Well, I see my time is up. I would respectfully disagree with that. I do believe that the plaintiff's testimony, Mrs. Gross' testimony is pretty clear, and I believe the audio supports it and contradicts Terry's testimony. Thank you, Ken. Thank you. Counsel made an argument about officers being permitted to go through an open door, and that's fine. And I agree with that. They are. I mean, don't worry about it. For a number of years, doors open, you can go through. Okay? This door wasn't completely empty, though. Mr. Gross was standing in it, and they pushed by him. You don't have to have a door broken down to have a forceful entry. That's first. We're relying a lot on Mrs. Gross' testimony. When Mrs. Gross was very clearly confused, I mean, Mrs. Gross was testifying that, you know, she was, you know, been married or divorced for four years. It was 40. I mean, it's clear this woman is confused. That's a whole separate issue on whether or not the court should legitimately and improperly disregard Mr. Gross' testimony, and I think that's the crux of the error that we're alleging here. With respect to this use of force, Mrs. Gross holding on to the sink was not what happened. And if you take the testimony of the officers who, one, say, we didn't need any more force than our arm strength to control this woman. That starts. Two, that she was handcuffed by the time that she asked for her clothes. And if you follow the sequencing in the audio tape, the commotion where you can hear her going into the sink and saying, my leg is broken, doesn't happen until after she asked for her clothes, which means she was handcuffed. This whole thing about her holding on to the sink is her being in error. That goes to a jury if you've got competent testimony going the other way. And this stop resisting never occurs on that tape until after she says, you've broken my knee. She was already injured at that point. I think the force was excessive. Whether she was handcuffed or not, still my issue is that the court improperly excluded the testimony, both the tape and the deposition of Mr. Gross in granting this motion for summary judgment. And I obviously will rely on my briefs with respect to your de novo considerations with whether or not we made the case and presented the arguments. Thank you. The case will be submitted. Please call the next case.